# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| JOHN DOE, A MINOR, THROUGH HIS PARENT AND GUARDIAN, MARY DOE. | Case No. _____ |
| *Plaintiff* | JURY DEMAND |
| v. | |
| HAMILTON COUNTY DEPARTMENT OF EDUCATION | |
| *Defendant.* | |

## COMPLAINT

COMES NOW Plaintiff, John Doe, a minor, by and through his parent, Mary Doe, and counsel, and submits this Complaint and showing:

### I. PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is John Doe who is a citizen and resident of Hamilton County, Tennessee, where he attends public school. His case is brought through his natural parent, Mary Doe.

2. The Defendant, the Hamilton County Department of Education, (hereinafter, "HCDE"), is a county government school district, organized under the laws of the State of Tennessee, providing public education to students of Hamilton County. It receives federal funds.

3. This action arises from Section 1983 and the First Amendment to the United States Constitution along with the Fourteenth Amendment to the United States Constitution. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331.

4. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the cause of action arose in Hamilton County and the Defendant may be found in Hamilton County.

## II. INTRODUCTION

5. This case involves suppression of middle school speech based upon a word or phrase regardless of its context. In short, John Doe, a middle school student with intellectual and emotional impairments recognized by the school, stated to his social studies teacher that the school would "blow up" if she looked inside his backpack.

6. Upon looking inside the backpack, its only contents were revealed to be a plush animal toy, which served as Doe's "security blanket" of sorts.

7. Administrators deemed this a "mass threat" and therefore triggered the "zero-tolerance policy" under Tennessee law, which necessitated reporting the incident to the School Resource Officer, and resulted in Doe, a middle school student with autism, being forcibly taken into custody and suspended from school.

8. "Blow up" has many meanings. People may "blow up" by losing their temper. A business or person may "blow up" by achieving rapid success, or ironically rapid deterioration. In either instance, context is key.

9. HCDE expelled John Doe and allowed him to be placed into police custody because the phrase "blow up" appeared in his sentence. The context was obviously not a true bomb threat. Doe had no bomb. He had no bomb plan. He had no history of bombs. No one even took it as such. He was exaggerating to make a point while trying to regulate his emotions.

10. The problem for Doe—and now HCDE—is that Doe used the phrase "blow up" through a series of overreactions and woefully failed training. HCDE believed, as its disciplinary hearing administrators put it, the use of such phrase is now just a zero-tolerance scenario in the State of Tennessee.

11. It is not. Context still matters. Doe was punished for using a word, not for how he used it in context, which is a violation of the First Amendment.

12. To make matters worse for HCDE, Doe's intellectual and emotional impairments were fully known to the school, its employees, and administrators. Furthermore, the actions of the school were in direct violation of Tennessee Code Title 49 which prohibits the use of isolation or restraint against students receiving special education in non-emergency situations.

13. The actions of HCDE employees constituted not only a violation of Doe's Constitutional rights, but also false imprisonment, intentional infliction of emotional distress, and battery.

## III. FACTS

14. On August 8, 2024, Doe was attending his social studies class. Doe has autism, which the school is aware of, and receives special education and other support resources from the school.

15. On the day in question, Doe indicated to his social studies teacher that she could not look inside his backpack or the school would "blow up." It is unclear why Doe indicated such, but it is believed Doe was referencing a popular video game and movie "Five Night's at Freddy's." In any event, the teacher viewed the contents of the bag which revealed merely a plush toy which served as a "security blanket" for Doe.

16. Despite the innocuous interaction between the teacher and a student with serious intellectual impairments, which the teacher and other school staff were completely aware of, the teacher decided to inform the assistant principal.

17. The assistant principal outrageously determined the interaction constituted a "mass threat" and that the school was required by law to report the incident to the school resource officer

on site. It must be noted that other administrators and staff indicated in Doe's subsequent Prior Written Notice of the school's Decision Report (attached as **Exhibit A**) that such behavior is recurrent, and the staff did not truly consider it a mass threat.

18. Despite the clear absence of any true threat, and in the context of a student with Doe's intellectual and emotional impairments, Doe was isolated, handcuffed by the SRO, and transported to juvenile detention.

19. The school called Doe's mother and informed her of the incident, and that she would need to contact juvenile detention to retrieve her son.

20. Juvenile detention intended on holding Doe for at least twenty-four (24) hours, but after contact with Buddy Presly, Mary Doe's employer and counsel, Mary Doe was able to retrieve her son after several hours.

21. Initially, Doe was expelled from the school. The school has subsequently attempted to backtrack their determination and indicated to Mary Doe that Doe could return. Mary Doe, concerned about her son's safety, emotional well-being, and education, no longer had any trust in the school's ability to treat her son reasonably and provide him the support he needs. She instead opted, through great hardship and administrative hurdle, to place Doe in another middle school.

22. As a consequence of HCDE's actions, Doe missed approximately 8 weeks of school.

23. Doe's statement was hyperbole. He had no literal bomb, as a search obviously revealed. He had no history of bombing, no knowledge, tools, or plans whatsoever to detonate any bomb. Here was a 13-year-old boy simply using an exaggerated statement with no understanding of any perceived severity which might occur.

24. The school admitted that the incident was a manifestation of Doe's autism. (See **Exhibit A**).

25. Just because he used the phrase "blow up," Doe was then arrested and charged with making a threat of mass violence on school property.[1]

*Tennessee's "Mass Violence" Law Demands Context to Avoid What HCDE Did to Doe.*

26. Last year, in response to a school tragedy in Nashville, the Tennessee legislature made it a felony for a student to threaten "mass violence" on "school property."[2]

27. The law contains important contextual limitations. It criminalizes speech that "a reasonable person would conclude could lead to the serious bodily injury…or death of two or more persons" on a school campus.[3] And to be consistent with the First Amendment, the legislature required school principals, law enforcement, and other government actors to make reasoned judgments about what is, and what is not, a threat.[4]

28. "We're looking for someone serious about blowing up Second Avenue," State Senator Farrell Haile, the bill's sponsor, told reporters shortly before its passage.[5] "We're talking about a patient making threats to kill a physician. We're talking about someone plotting to shoot up a school…If you've got a 14- or 15-year-old kid spouting off, we don't want them arrested. We don't want that on their record."[6]

---

[1] See T.C.A. § 49-6-3401(g)(5)
[2] T.C.A. § 39-16-517(b)(1)(addressing threat assessment).
[3] T.C.A. § 39-16-517(a)(1)
[4] Tennessee's statute closely tracks the U.S. Supreme Court's framework for distinguishing Constitutionally protected speech from unprotected "true threats." See *Counterman v. Colorado*, 600 U.S. 66 (2023).
[5] "Tennessee youth advocates concerned about bill to criminalize threats of mass violence." *Wadhwani, Anita. Tennessee Lookout, August 21, 2023.*
[6] Context always has mattered under the First Amendment. Examples are innumerable including the proverbial shout of "Fire!" in the safety-related confines of a theater. Obscenities shouted at the TV are protected but the same obscenities in a stranger's face may be "fighting words."

29. Context is key—true threats versus kids "spouting off." In fact, Tennessee's statute instructs government agents how to distinguish off-hand comments from genuine threats of mass violence. First, government agents must look objectively at the context to determine whether "a reasonable person" would conclude that the student's speech could lead to the "serious bodily injury" or "death of two or more persons."[7] If a reasonable person would hear the speech as bluster, hyperbole, slang, or a joke, the speech is not a threat.

30. Second, the speaker's intention must be considered. The speaker must "recklessly" threaten mass violence.[8] A student is "reckless" if they are aware of "a substantial and unjustifiable risk" that others may perceive their speech as a threat of mass violence, but they "consciously disregard" that risk.[9] Doe lacks the intellectual and emotional understanding to meet this definition. See attached Exceptional Education Evaluation (**Exhibit B**).

31. Third, when a student has been the subject of a threat investigation, the Director of Schools shall require the student "to submit to a threat assessment" to determine whether the speech was "a valid threat."[10] The threat assessment must include school personnel and law enforcement personnel who have been specifically trained "to assess individuals exhibiting threatening or disruptive behavior and develop interventions for individuals exhibiting such behavior." Clearly, such assessment requires contextual analysis.

*The Disciplinary Appeal*

32. HCDE has officially adopted a "Code of Acceptable Behavior," Board Policy 6.309, with an issued date of September 19, 2024. Under Policy 6.309, the director of schools is

---

[7] T.C.A. § 39-16-517(a)(1).
[8] T.C.A. § 39-16-517(b)(1).
[9] T.C.A. § 39-11-302(c).
[10] T.C.A. § 49-6-3401(g)(5).

required to report any valid threat to law enforcement. The staff at Ooltewah Middle School grossly violated Doe's Constitutional rights by criminalizing his speech and placing him in custody; speech which clearly in no way, shape, or form constituted a legitimate threat.

33. Doe was terrified and humiliated by the school's conduct. Significant to Doe was the school's questioning of him and insistence that he may have used drugs or alcohol. Doe vehemently denied such allegations and is extremely bothered by them to this day. Furthermore, Doe has an extreme distrust and fear of law enforcement due to his mistreatment. Any child of Doe's age would have felt similarly. These consequences are exacerbated given Doe's cognitive conditions, which again the school was fully aware of.

34. Tennessee Code Title 49 (§ 49-10-1304) states that a student receiving special education services shall not be isolated or physically held unless there is an emergency situation. The staff at Ooltewah Middle School, employees of HCDE, and an SRO under contract with HCDE all violated this protective statute.

35. HCDE and their employees violated Doe's Constitutional rights by depriving him of liberty in an ill-advised knee-jerk reaction to Doe's statement. Such conduct is outrageous and recognized as such even by administration and staff at Ooltewah Middle School. Such conduct not only wrongfully deprived Doe of his liberty, but also subjected him to severe emotional distress.

## IV. LEGAL CLAIMS

*First Amendment and Section 1983*

36. The First Amendment protects the right to free expression. A key exception concerns "true threats" of violence. "[T]he 'true' in that term distinguishes [true threats] from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility

that violence will follow (say, 'I am going to kill you for showing up late.')."[11] Doe's speech was exactly that kind of hyperbole. His speech was not a "true" threat.

37. Nor did Doe's speech "substantially and materially disrupt" the learning environment.[12] Also, he was not indecent, lewd, or vulgar with his speech.

38. Doe's teacher sent him to the office and immediately continued teaching. There was no evacuation, no instructional breaks, no material and substantial disruption.

39. HCDE's decision to harshly penalize Doe for use of the word "blow up" is a deliberate choice arising from its policies and procedures, violating the First Amendment. Additionally, under Section 1983, HCDE was deliberately indifferent by failing to train its decision-makers about application of context-dependent words and penalties for what was obviously not a true threat. This caused Doe both educational and emotional harm.

40. Defendant, under color of state law, infringed on Doe's First Amendment rights and did so with deliberate indifference.

*Fourteenth Amendment and Section 1983*

41. The Fourteenth Amendment guarantees the right to due process. Due process has two components: a substantive component, and a procedural component. Substantive due process is, in essence, the right to a "right" result. Procedural due process is the right to a fair procedure before the government deprives a person of liberty or property. The defendants' actions violated

*Doe's rights to both.*

i. Procedural Due Process

---

[11] *Watts v. United States*, 394 U.S. 705, 708 (1969) in *Counterman v. Colorado*, 600 U.S. 66, 74 (2023).
[12] *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503 (1969).

Page 8 of 10

Case 1:25-cv-00005-CEA-CHS   Document 1   Filed 01/03/25   Page 8 of 10   PageID #: 8

42. Here, Doe was taken into custody nearly immediately. There was not adequate due process as there was a complete absence of due process.

ii. Substantive Due Process

43. Turning to substantive due process, in the context of school discipline, substantive due process violations are admittedly rare. Education is not a fundamental right, and therefore the school's interference with Doe's education — "property"— will be upheld so long as the school's actions are rationally related to a legitimate state interest. But here, HCDE's actions were arbitrary and irrational, and therefore unconstitutional.

44. No one believed Doe's words were truly threatening. Again, Doe was expelled simply because his words contained a magic phrase "blow up." Expelling a student for making a comment that no one perceived as threatening is not rationally related to any legitimate state interest.

*Intentional Infliction of Emotional Distress*

45. Plaintiff hereby incorporates all preceding paragraphs as if specifically restated herein.

46. Defendant's actions constituted outrageous conduct which could foreseeably cause a reasonable person severe emotional distress.

47. Defendant's actions have damaged the Plaintiff.

*False Imprisonment and Battery*

48. Plaintiff hereby incorporates all preceding paragraphs as if specifically restated herein.

49. Defendant's actions constituted an unlawful and offensive contact with the Plaintiff which was not consented to.

50. Defendant's actions of isolating the Plaintiff not only violated Tennessee Code Title 49 but constituted common law false imprisonment and battery.

## PRAYER FOR RELIEF

For relief, Plaintiff seeks:

    A. Declaratory relief of Constitutional violations.

    B. Compensation for humiliation, mental anguish, and damage to his reputation for which he seeks recovery.

    C. Nominal damages for Constitutional violations.

    D. Attorneys' fees and costs. 42 U.S.C. §1988(b); 42 U.S.C. §1983.[13]

51. A jury is demanded for all claims triable by jury.

Respectfully submitted, this 3rd day of January 2025.

                                             **PRESLEY LAW FIRM**

                                             Buddy B. Presley, Jr. (BPR # 013921)
                                             1384 Gunbarrel Road, Suite A
                                             Chattanooga, TN 37421
                                             (423) 826-1800
                                             bpresley@presleylawfirm.com

---

[13] *Id.* A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. *Smith v. Wade*, 461 U.S. 30, 52 (1983) ("Compensatory damages ... are mandatory."). See also *Carey v. Phiphus*, 435 U.S. 247, 266-67 (1978).